UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHARLES E. SUTTON,       :

      Petitioner,   :   **MEMORANDUM DECISION**

      - v -     :   20-CV-2844 (DC)

MARK ROYCE, Superintendent of Green :
Haven Correctional Facility,

            :

      Respondent.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


APPEARANCES:   CHARLES E. SUTTON
        Petitioner *Pro Se*
        DIN 16A2952
        Wallkill Correctional Facility
        Route 208
        Box G
        Wallkill, NY  12589-0286

        TIMOTHY D. SINI, Esq.
        Suffolk County District Attorney
        By: Marion Tang, Esq.
          Assistant District Attorney
        200 Center Drive
        Riverhead, NY 11901
         Attorney for Respondent

CHIN, Circuit Judge:

    On June 30, 2016, following a jury trial, petitioner Charles Sutton was

convicted in the Supreme Court of the State of New York, Suffolk County (Mazzei, *J.*),

of one weapons count and three narcotics counts. *See* Dkt. 6-8 at 4. He was sentenced, as a prior felony offender, to a total of fifteen years' imprisonment and five years' post-release supervision. *Id.* at 5. All but one of his convictions were affirmed by the Appellate Division, Second Department, which vacated his conviction on one narcotics count because it was a lesser included offense of one of the other counts. *People v. Sutton*, 90 N.Y.S.3d 109, 110, 112 (2d Dep't 2018) ("*Sutton I*"). The New York Court of Appeals denied leave to appeal. *People v. Sutton*, 123 N.E.3d 840 (N.Y. 2019) (Rivera, J.) ("*Sutton II*").

On June 18, 2020, Sutton, proceeding *pro se*, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). *See* Dkt. 1. Respondent Mark Royce, represented by the Suffolk County District Attorney's Office, filed his opposition on October 26, 2020 and, after many extensions, Sutton filed a reply on March 6, 2023. *See* Dkt. 5-1, 17. In a letter filed April 27, 2021, Sutton moved to hold his habeas case in abeyance while he sought collateral relief in state court under New York State Criminal Procedure Law ("CPL") § 440.10. *See* Dkt. 9. On November 5, 2021, this Court (Gujarati, J.) ordered the parties to submit status reports regarding the anticipated § 440.10 motion. *See* Dkt. Order Dated 11/5/2021. On December 8, 2021, after receiving a status report from the District Attorney's Office but not from Sutton, the Court found Sutton had not shown good cause for a stay and denied Sutton's request "without prejudice to Petitioner renewing his request if, for example, Petitioner

demonstrate[d] that he ha[d], indeed, filed a 440.10 Motion." Dkt. Order Dated

12/8/2021. Sutton did not renew his request. On October 25, 2023, the case was

reassigned to the undersigned.

For the reasons that follow, Sutton's petition is DENIED.

## STATEMENT OF THE CASE

I.    *The Facts[1]*

The evidence at trial established the following:

On April 7, 2015, members of the Suffolk County Police Department had

identified two individuals -- Russell Heeber and Erin Teaney -- who they suspected

might buy drugs and were, accordingly, surveilling them. *See* Dkt. 6-8 at 18. Officers

Rossler, Krolikiewicz, and Conroy and Sergeant Kosciuk followed them from a

pawnshop in Ronkonkoma called J&B Buy and Sell to a parking lot in Waverly Plaza, at

425 Sunrise Highway in Patchogue, just after 7 p.m. *Id.* at 18-19. Heeber, who was

driving a Nissan Sentra, *id.* at 18, parked the car in a spot "away from the stores." *Id.* at

19.

Teaney and Heeber sat in the car for about 40 minutes. *Id.* Officer Rossler

was parked "one aisle behind" the Sentra. *Id.* At around 7:48 p.m., a red Nissan Altima

pulled into the well-lit parking lot and positioned itself so that the Altima's driver was

---

[1]    The facts are drawn from the Respondent's Brief submitted to the Appellate Division in
2018. The recitation of facts set forth in the brief are supported by detailed citations to the trial
transcript and exhibits. *See* Dkt. 6-8 at 6-29.

next to Teaney's window on the passenger side of the Sentra.  *See id.* at 19-20.  Officer

Krolikiewicz later identified Sutton in court as the driver of the red Altima.  Dkt. 6-5 at

84-85; Dkt. 6-8 at 20 n.19.  Officer Rossler had a "good view" and could see both Sutton's

and Teaney's windows.  Dkt. 6-8 at 19-20.  Officer Rossler saw Sutton and Teaney have

a brief conversation after rolling down their car windows, and then observed Teaney

give Sutton money and receive a light-colored package from Sutton in return.  *Id.* at 20.

Officer Rossler determined that, based on his experience, he witnessed a drug

transaction in which Sutton was the seller and Teaney was the buyer.  *See id.*  He

informed the other officers, who proceeded to surround the Altima and Sentra with

their cars.  *See id.* at 20-21.

Officers Rossler and Conroy identified themselves as police and

approached the Sentra.  *Id.* at 21.  Teaney complied with Officer Conroy's request to exit

the car and they had a conversation.  *Id.*  Teaney then handed Officer Conroy eight

yellow wax envelopes that had been in her jeans pocket.  *Id.*  Teaney was arrested, and

Officer Conroy recovered her cell phone.  *Id.*[2]  Simultaneously, Sergeant Kosciuk and

Officer Krolikiewicz approached the Altima and positioned their cars to "block" Sutton

from driving off.  *See id.*  Officer Krolikiewicz exited his car, drew his gun, identified

himself as police, and instructed Sutton not to move.  *See id.*  As he drew near, Officer

---

[2]      Later, Officer Conroy gave Teaney's cell phone to Detective Murphy and forwarded the
eight envelopes to the Crime Laboratory for analysis. Dkt. 6-8 at 21.  Testing confirmed they
contained heroin.  *Id.* at 27.

4

Krolikiewicz saw through the car windows that Sutton had money in his left hand and "wax paper envelopes that's consistent with the packaging of heroin" in his right hand. *Id.* at 22.  Sutton put the Altima in "park."  *Id.*  Officer Krolikiewicz proceeded to holster his weapon, open Sutton's car door, and lean in.  The money Sutton had been holding was now on the floor by the driver's seat, and Officer Krolikiewicz later recovered it.  *Id.* Officer Krolikiewicz handcuffed Sutton and saw a silver handgun in an open compartment under the radio.  *Id.*  Even after being removed from the car, Sutton continued to clutch the envelopes, and so Officer Krolikiewicz pried open his fingers to remove them.  *Id.*

After transporting Sutton to the precinct, Officer Krolikiewicz helped to process Sutton's arrest.  *Id.* at 23.  He sent, in a sealed security envelope, what he thought were 11 wax paper envelopes (the ones he recovered from Sutton's hand) for testing.  He also sent the recovered money to the property unit and brought two phones -- a white iPhone from Sutton's pocket and a black cell phone from the Altima's passenger-side floor -- to a unit "to get downloaded."  *See id.*  Later, a forensic scientist discovered that there were actually 12 wax envelopes and, after conducting testing, concluded that the substance inside was heroin.  *Id.* at 26-27.

Two detectives -- Boreshesky and Murphy -- were summoned to the precinct to assist with Sutton's processing.  *Id.* at 23.  Detective Boreshesky gave Sutton water and advised him of his *Miranda* rights, which Sutton waived.  *Id.* at 23-24.

5

Detective Boreshesky then proceeded to interview Sutton for roughly "an hour and ten minutes." *Id.* at 24.  During the interview, Sutton told Detective Boreshesky that he went to the parking lot to sell eight bags of heroin to a girl and that he kept the gun in the car for protection because he had been robbed a few weeks earlier. *Id.* Sutton explained that while the Altima was registered and insured in another person's name, it was his car. *Id.* Sutton declined to provide a written statement and noted that he had done so in a prior case and it did not work out well for him. *Id.*

Meanwhile, Detective Murphy interviewed Teaney, who signed a consent to let Detective Murphy search her phone. *Id.* at 24.  Detective Murphy reviewed the contents of the phone, and photographed communications from the phone that were connected to the case. *Id.* at 24-25.

Detective Murphy also took photographs of the Altima, which had been transported to the precinct, and recovered the gun from the Altima. *Id.* at 22, 25.  The gun had a serial number and Detective Murphy determined Sutton was not eligible to have a carry permit from Suffolk County. *Id.* at 25.  Detective Murphy then processed the gun and removed its magazine, which had six rounds of ammunition. *Id.* He swabbed the gun for DNA, sealed it in a box, and sent it to a unit for fingerprint and operability analyses.  The gun tested negative for DNA and the fingerprint analysis came back negative as well.  After testing, a forensic scientist determined that the gun was operable. *Id.* at 26.

6

An analysis of the phones that were "downloaded" revealed text messages and calls between Teaney's phone and Sutton's iPhone, which indicated that Teaney and Sutton planned to meet for a drug deal. *Id.* at 30.

## II.   *The State Court Proceedings*

### a.   *The Indictment*

Sutton was indicted in Suffolk County on one count each of criminal possession of a weapon in the second degree under N.Y. Penal Law § 265.03[3], criminal sale of a controlled substance in the third degree, *id.* § 220.39[1], criminal possession of a controlled substance in the third degree, *id.* 220.16[1], and criminal possession of a controlled substance in the seventh degree, *id.* § 220.03.  Dkt. 5 at 2.

### b.   *Pre-Trial Hearing*

On March 14, 2016, the trial court (Mazzei, *J.*) held a combined pre-trial hearing to determine whether the police had probable cause to arrest and seize evidence from Sutton and to determine the voluntariness of the statements he made to law enforcement officials. *Id.* Officers Rossler and Krolikiewicz and Detective Boreshesky testified at the hearing. *Id.* Their testimony established:

The Suffolk County Police Department created a task force (the "Task Force") to investigate burglaries and larcenies in the area. *See* Dkt. 6-8 at 6. Officer Krolikiewicz testified that he observed a connection between burglaries, larcenies, and drugs, and so these investigations sometimes led to drug investigations. *Id.* at 7.

Individuals sometimes used pawnshops to obtain cash so they could buy drugs. *Id.* For

example, an individual might steal from a store, return the stolen item to the store in

exchange for a gift card, and then swap the gift card for cash at a pawnshop. *Id.*

Accordingly, the Task Force surveilled certain pawnshops. *See id.*

On April 7, 2015, a Task Force team consisting of Sergeant Kosciuk and

Officers Krolikiewicz, Rossler, and Conroy surveilled a pawnshop in Ronkonkoma

called J&B Buy and Sell. *Id.* at 6-7. The team members focused on Heeber and Teaney,

who "had just had a pawn done" and were in a gray Nissan Sentra. *Id.* at 6. Officer

Krolikiewicz testified that, based on his experience, he believed that Heeber and Teaney

"fit the heroin user" profile or that they had "possibly committed some sort of larceny."

*Id.* at 7. The officers followed Heeber and Teaney to a parking lot in Patchogue where

Heeber, who was driving the Sentra, parked the car in the middle to the back of the lot,

not near the stores. *Id.* The officers surveilled the Sentra for 30 to 40 minutes. *Id.*

Around 7:48 p.m., a red Nissan Altima pulled up to the Sentra so that the

driver's window of the Altima was next to the Sentra's front passenger window. *Id.* at 8.

Officer Rossler had a clear view of the space between the two cars and testified that he

saw "the windows come down on both vehicles" and the individuals have a quick

conversation. *Id.* Officer Rossler then saw Teaney's right hand extend out with money

in it, which she handed to the driver of the Altima, who he identified as Sutton. Sutton

then dropped "some kind of light or yellow-colored packaging" into Teaney's hand. *Id.*

Officer Rossler concluded, based on his training and experience, that he observed a

drug transaction and told his fellow officers to "move in." *Id.* Subsequent testimony at

the hearing described events also described at trial and are recounted above in the fact

section.

Sutton's defense counsel argued that the officers had not given any

articulable reason why they followed the Sentra to the parking lot where Sutton

eventually arrived. *See* Dkt. 6-8 at 12. Counsel also argued that while one officer

testified that he observed the hand-to-hand drug transaction, another officer testified

that Sutton had "both the money and the drugs." *Id.* Counsel also moved to preclude

some of the statements and explanations Sutton made after his arrest. Dkt. 5 at 7.

On March 31, 2016, in a written decision, the court found that Officer

Rossler observed a drug transaction between Sutton and another individual and that

Officer Krolikiewicz saw Sutton holding both cash and envelopes commonly used to

package drugs. *See* Dkt. 6-8 at 13. Accordingly, the court concluded that the

prosecution "presented ample evidence" to meet its burden to establish probable cause

for Sutton's arrest. *Id.* The court further found Sutton's statements that he "sold heroin

to a female in the Pep Boys parking lot in Patchogue" and "had a handgun in his vehicle

that he kept with him for protection in case he was robbed" both voluntary and

admissible. *Id.* The court, however, found inadmissible Sutton's statements about

needing to sell drugs to eat and about why he would not give a written statement --

9

because he had done so in the past but it "didn't work well for him." *Id.* at 11, 13. The

court also declined to suppress the evidence recovered from Sutton and the Altima after

his arrest. *Id.* at 13.

      **c.**    ***The Trial***

      Trial began on May 17, 2016 with jury selection. Dkt. 6-3 at 17. During the

course of trial, the jury heard testimony from several law enforcement witnesses,

including Officers Krolikiewicz and Rossler and Detectives Boreshesky and Murphy.

The prosecution also offered into evidence the heroin, envelopes, and gun, Dkt. 6-5 at

235-36 (heroin); *id.* at 254, 451 (envelopes); *id.* at 316-17, 401-02 (gun), as well as

photographs of communications on Teaney's phone connected to the case, including

those between Teaney and Sutton, Dkt. 6-8 at 24-25; Dkt. 6-5 at 327-28.

      On May 19, 2016, the People requested to modify the court's pre-trial

decision because of statements made by Sutton's lawyer during his opening. They

argued that his statements -- that Sutton was actually an addict purchasing drugs and

not the seller -- opened the door to introduce evidence of Sutton's other sales. The court

denied the admission of evidence of Sutton's other drug sales. The People also moved

to introduce Sutton's stated reason for not giving a written statement. They did so

because of statements made by Sutton's lawyer, which suggested the police could have

obtained a written statement and asked the jury to consider why Sutton did not provide

one.  The court permitted the introduction, with a limiting instruction, of Sutton's explanation about why he would not give a written statement.  Dkt. 6-8 at 14.

On May 23, 2016, before Detective Murphy testified, the government requested that the court close the courtroom for his testimony.  Sutton's counsel objected to closing the courtroom to the public, pointing out that members of Sutton's family were present.  Dkt. 6-8 at 16.  During a hearing on the requested courtroom closure, Detective Murphy testified that he often worked undercover, was currently working on investigations, and had cases pending in the courthouse against other defendants.  *Id.* at 16.  He stated that testifying in an open courtroom would jeopardize the integrity of his investigations and threaten the safety of law enforcement officials, including himself.  *Id.* at 17.  Sutton's counsel did not ask Detective Murphy any questions and said that he would "rely on my legal arguments as to the constitutionality of closing this courtroom to the general public."  *Id.*  The court granted the closure of the courtroom during Detective Murphy's testimony.  *Id.*

While the defense did not put on a case, Sutton's counsel asked the court to read into the record a stipulation reached between the parties about the time the sun set on April 7, 2015.  *See* Dkt. 6-5 at 500-02.  On May 25, 2016, the jury found Sutton guilty on all counts.  *See* Dkt. 6 at 77-79; Dkt. 6-5 at 589; Dkt. 6-8 at 32.

### d.  The Sentencing Hearing

On June 30, 2016, the trial court sentenced Sutton.  *See* Dkt. 6 at 192-212. Sutton's defense counsel argued that the court take several "factors into perspective" for sentencing, including that "a very small amount of heroin" was involved, Sutton cooperated with the authorities from arrest through trial, and "there [are] no allegations that he ever picked up [the] gun." *Id.* at 202-04.  Defense counsel added that Sutton maintained his innocence.  *Id.* at 202.  Sutton spoke on his own behalf at sentencing, asking the court for leniency because of his sick father and his drug addiction.  *Id.* at 204-06.  He also asked why he was not permitted to "go to the Grand Jury." *Id.* at 204.

The court sentenced Sutton, as a prior felony offender, to fifteen years' imprisonment and five years' post-release supervision for criminal possession of a weapon in the second degree, twelve years' imprisonment and three years' post-release supervision for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, and one year of imprisonment for criminal possession of a controlled substance in the seventh degree, all to run concurrently.  *Id.* at 210; Dkt. 6-8 at 4-5.

### e.  Direct Appeal

On December 5, 2017, represented by counsel, Sutton appealed his convictions to the Appellate Division, Second Department.  *See* Dkt. 5 at 23.  Sutton argued that (1) the trial court erred by denying his motion to suppress because the

12

police lacked probable cause and reasonable suspicion to seize him, (2) he was denied effective assistance of counsel when his trial attorney failed to move to re-open the suppression hearing after hearing the testimony of police officers at trial, (3) the trial court violated his right to a public trial by excluding his family members from the courtroom during Detective Murphy's testimony, (4) the trial court should have dismissed the charge of criminal possession of a controlled substance in the seventh degree as a lesser included count of criminal possession of a controlled substance in the third degree, (5) his convictions were rendered on insufficient evidence and against the weight of the evidence, and (6) the sentences were excessive. Dkt. 6 at 13-14. All but one of his convictions were affirmed by the Appellate Division, Second Department, which vacated his conviction of criminal possession of a controlled substance in the seventh degree because it was a lesser included count of criminal possession of a controlled substance in the third degree. *Sutton I*, 90 N.Y.S.3d at 110, 112.

Sutton requested leave to appeal to the New York Court of Appeals on three issues: (1) whether he sufficiently preserved his claim that he was denied the right to a public trial, (2) whether the police had reasonable suspicion to forcibly detain him by blocking his car, and (3) whether trial counsel should have moved to re-open the suppression hearing following trial testimony and was ineffective for not doing so. Dkt. 6-10 at 1; Dkt. 6-11 at 1-2. On March 11, 2019, the Court of Appeals denied leave to appeal. *Sutton II*, 123 N.E.3d at 840.

13

III.  *The Petition*

On June 18, 2022, Sutton filed the Petition, raising the same claims he

raised on appeal to the Appellate Division, including those not presented to the Court

of Appeals.  *See generally* Dkt. 1.

## DISCUSSION

I.  *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal

court may reverse a state court ruling only where it was 'so lacking in justification that

there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123,

126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v.*

*Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

14

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement affords state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).  But if a petitioner's unexhausted claim is "plainly meritless, the court may deny the claim on the merits notwithstanding the petitioner's failure to exhaust." *Ortiz v. Heath*, No. 10-cv-1492 (KAM), 2011 WL 1331509 at *14 (E.D.N.Y. April 6, 2011) (citing 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment."

15

*Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (1) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (citation omitted), and (2) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (collecting cases). Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming the denial of habeas relief where the petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal). If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal

16

law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

## II.   *Analysis*

In his Petition, Sutton contends that (1) the trial court erred by denying his motion to suppress because the police lacked probable cause and reasonable suspicion to seize him, (2) he was denied effective assistance of counsel when his defense counsel failed to move to re-open the suppression hearing after hearing the testimony of police officers at trial, (3) the trial court violated his right to a public trial by excluding his family members from the courtroom during Detective Murphy's testimony, (4) the trial court should have dismissed the charge of criminal possession of a controlled substance in the seventh degree as a lesser included count of criminal possession of a controlled substance in the third degree, (5) his convictions were rendered on insufficient evidence and against the weight of the evidence, and (6) the sentences imposed were excessive. Dkt. 1 at 2, 16.[3]  I address each claim in turn.

---

[3]      Sutton emphasizes four arguments in his reply brief.  *See* Dkt. 17 at 4.  Although his reply brief frames the arguments slightly differently than his Petition does, they are essentially the same arguments as in the Petition.  *Compare id.* ("The Petitioner's 4th Amendment Right to be free from unlawful search and seizure were violated" and "The auto search and seizure Petitioner was subjected to was a result of Fruit of the Poisonous Tree"), *with* Dkt. 1 at 5 ("Trial Court erred in denying Mr. Sutton's motion to suppress [based on the Fourth Amendment] . . . the police lacked both Probable Cause and Reasonable Suspicion to seize him.").  Accordingly, this Court will only address the arguments as framed in the Petition.

### A.  Fourth Amendment Claim

Sutton argues the trial court erred by denying his motion to suppress because the "police lacked both [p]robable cause and [r]easonable [s]uspicion to seize him." Dkt. 1 at 5.  The Appellate Division considered the claim on direct appeal and concluded that testimony from Officers Rossler and Krolikiewicz at the pre-trial hearing established "reasonable suspicion that [Sutton] had engaged in illegal drug activity." *Sutton I*, 90 N.Y.S.3d at 111.  Sutton presented the Fourth Amendment claim to the Court of Appeals.  For the reasons stated below, this claim fails.

Habeas relief is unavailable for purported Fourth Amendment violations where a state court provided a petitioner with a full and fair opportunity to litigate his claims.  *See Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.").  A petitioner did not receive a full and fair opportunity to litigate his claims, and thus may obtain habeas relief, only if he either establishes that "'the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations,' or, 'if the state has provided a corrective mechanism,' that the petitioner 'was precluded from using that mechanism because of an unconscionable breakdown in the underlying

process.'" *Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (quoting *Capellan v. Riley*, 975

F.2d 67, 70 (2d Cir. 1992)).  To establish such a breakdown, the petitioner would have to

prove that "the state system 'failed to conduct a reasoned method of inquiry into

relevant questions of fact and law.'" *Hicks v. Bellnier*, 43 F. Supp. 3d 214, 231 (E.D.N.Y.

2014) (citing *Capellan*, 975 F.2d at 71).

Sutton cannot show that he did not receive a full and fair opportunity to

litigate his Fourth Amendment claim.  *See Capellan*, 975 F.2d at 70.  The Second Circuit

has long held that New York's procedure for litigating Fourth Amendment claims is

facially adequate.  *Id.* at 70 n.1 (collecting cases); *Daily v. New York*, 388 F. Supp. 2d 238,

249 (S.D.N.Y. 2005) ("The State of New York clearly has provided defendants . . . with

the necessary corrective procedures through Section 710 of the New York Criminal

Procedure Law.").  Therefore, because New York has provided a "corrective

mechanism," Sutton may only obtain habeas relief if he can establish that he was

"precluded from using that mechanism because of an unconscionable breakdown in the

underlying process." *Ethridge*, 49 F.4th at 684 (quoting *Capellan*, 975 F.2d at 70).

To establish an unconscionable breakdown, Sutton would have to show

that the trial court and the Appellate Division "failed to conduct a reasoned method of

inquiry into relevant questions of fact and law," *Hicks*, 43 F. Supp. 3d at 231, which is a

"stringent standard," *Clanton v. LaClair*, No. 14-CV-4551, 2015 WL 13832649, at *11

(S.D.N.Y. Nov. 4, 2015), *report and recommendation adopted*, 2019 WL 4688725 (S.D.N.Y.

Sept. 25, 2019); *see also Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd*, 852 F.2d 59 (2d Cir. 1988) ("In short an unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society."). Sutton has made no such showing here.

After Sutton filed a suppression motion, the trial court held a combined pre-trial hearing in which it heard testimony from three law enforcement officials, and it issued a written decision concluding that the prosecution "presented ample evidence" to meet its burden of establishing probable cause for Sutton's arrest. Sutton's counseled brief in the Appellate Division addressed his Fourth Amendment claim. The Appellate Division reviewed the denial on the merits and affirmed, providing an explanation of its reasoning about the existence of reasonable suspicion. *Sutton I*, 90 N.Y.S.3d at 110-11. Sutton then filed a counseled leave application to the Court of Appeals raising his Fourth Amendment claim, which the Court of Appeals denied. While Sutton takes issue with the Appellate Division's analysis, his "mere disagreement with the outcome of [the] state court ruling is not the equivalent of an unconscionable breakdown." *Capellan*, 975 F.2d at 72. Moreover, even if habeas relief were available, Sutton's claim would fail because the Appellate Division's decision on the merits is entitled to "substantial deference," *Fischer*, 780 F.3d at 560. In light of the evidence that police

officers saw what appeared to be -- and was -- an ongoing narcotics transaction, the Appellate Division's decision was eminently reasonable.

Thus, this claim provides no basis for federal relief.

### B.     *The Ineffective Assistance of Counsel Claim*

Sutton argues that his trial counsel was ineffective when he failed to move to re-open the suppression hearing after hearing the testimony of police officers at trial. *See* Dkt. 1 at 2, 16. The Appellate Division considered the claim on direct appeal and concluded, without elaborating, that the claim lacked merit. Sutton unsuccessfully sought leave to appeal to the Court of Appeals on this claim. For the reasons stated below, this claim fails.

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington,* 562 U.S. at 105 (collecting cases). Therefore, "[t]he operative question" when a federal court reviews a state court's

ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable . . . ." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard to establish an ineffective assistance of counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation . . . ." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance. *See Alvarez*, 125 N.E.3d at 120.

Sutton raised his ineffective assistance of counsel claim on direct appeal, Dkt. 6 at 3-4. After specifically addressing his other five claims, the Appellate Division concluded, without elaborating: "The defendant's remaining contention is without merit." *Sutton I*, 90 N.Y.S.3d at 112. That determination was objectively reasonable under state and federal law.

Sutton claims here, as he did on direct appeal, that his defense counsel was constitutionally deficient because he "failed to move for a re-opening of the suppression hearing after each and every officer -- including [O]fficer Rossler -- testified

22

at trial that they never definitively saw Mr. Sutton exchange drugs or currency." Dkt. 1

at 7.  The crux of Sutton's argument is that Officer Rossler's trial testimony that "he did

not actually know for sure whether either drugs or money were exchanged" was a

change from his hearing testimony that he had seen Sutton hand Teaney small packets

that resembled narcotics in exchange for cash -- a change that Sutton contends should

have prompted defense counsel to move to re-open the suppression hearing.  *See* Dkt. 6-

7 at 41.  Sutton also claims that the Appellate Division "[f]ailed to adjudicate" his

ineffective assistance of counsel claim, presumably because it did not discuss it at

length.  Dkt. 1 at 17.

As a preliminary matter, a review of Officer Rossler's testimony does not

show any change.  At the pre-trial hearing, Officer Rossler testified that he had a clear

view and he:

> saw the windows come down on both vehicles.  I observed
> the passenger, the female passenger, *look like* they were
> having a quick conversation, real brief.  I saw her right hand
> extend out with money in it, and hand it over to the driver of
> the red Altima, gave it to him, in his left hand.  I saw both
> hands go back in the vehicle.  I saw the driver of the red
> Altima extend his hand back out of the vehicle and drop
> *some kind of light or yellow-colored packaging into her hand,* and
> then hands went back in the vehicle, and then I radioed to
> my teammates that the exchange was -- the drug exchanges
> occurred.

Dkt. 6-2 at 11:18-12:11 (emphases added).  On direct examination at trial, Officer Rossler

testified that "[i]t *looked like* there was a brief conversation between the two and then a

drug exchange between the two."  Dkt. 6-5 at 183:7-9 (emphasis added).  He testified:

> [T]he female rolled the window down, extended her arm,
> had money in her hand and gave it to the occupant, or the
> driver, of the red Altima, who took the money in the car.
> Then his hand came out and dropped a light-colored
> package, or placed, I should say, a light-colored package in
> her hand.  And then she extended her hand back into her
> car.

Dkt. 6-5 at 183:11-17.  On cross examination, Officer Rossler testified: "I can't say

definitely that what I'm looking at is drugs or money for sure."  Dkt. 6-5 at 205:9-10.  In

both sets of testimony, Officer Rossler explained his observations of the encounter,

including that he saw a packet or package, and admitted on cross that he "can't say

definitely" that the packet was drugs.  The testimony is consistent.

In any event, even assuming Officer Rossler's testimony changed, Sutton

still cannot show that the Appellate Division's decision was incorrect, let alone that it

was objectively unreasonable.  *Waiters*, 857 F.3d at 478.  The Supreme Court has

cautioned that evaluating counsel's performance depends on "all the circumstances,"

and cannot be reduced to a "checklist."  *Strickland*, 466 U.S. at 688.  "There are countless

ways to provide effective assistance in any given case."  *Id.* at 689.  Accordingly,

"[c]ounsel is not obliged to advance every nonfrivolous argument that could be made"

to provide constitutionally satisfactory representation.  *Aparicio v. Artuz*, 269 F.3d 78, 95

(2d Cir. 2001) (citations omitted).  Here, considering all the circumstances, defense

counsel provided constitutionally satisfactory representation because he actively

litigated the case from the pre-trial stage through sentencing.  His failure to move to re-

open the suppression hearing, even assuming such a motion was nonfrivolous, does not

change that conclusion.  *See id.*  Although the officers could not "definitively" say that

the small packets were drugs (given that they were observing from a distance), Dkt. 1 at

7, the jury could surely reasonably infer from the circumstances that the small packets

being exchanged for cash contained narcotics.  Accordingly, Sutton's claim fails.

### C.    *Public Trial Claim*

Sutton argues that the trial court violated his right to a public trial by

excluding his family members from the courtroom during Detective Murphy's

testimony.  Dkt. 1 at 16.  The Appellate Division considered the claim on direct appeal

and concluded New York's contemporaneous objection rule procedurally barred the

challenge because Sutton failed to preserve it for appellate review.  *Sutton I*, 90 N.Y.S.3d

at 111-12.  Sutton unsuccessfully requested leave to appeal to the Court of Appeals on

this claim.  For the reasons stated below, habeas relief is not available to Sutton for his

public trial claim.

For a state procedural bar to bar habeas relief, two criteria must be met.

First, the state court rendering the judgment must "clearly and expressly state[] that its

judgment rests on a state procedural bar."  *Whitley v. Ercole,* 642 F.3d 278, 286 (2d Cir.

25

2011) (quoting *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir. 1996)).  The Appellate Division

did so here by stating that Sutton's public trial claim was "unpreserved for appellate

review" because of "the absence of a specific objection by defense counsel as to the

propriety of closing the courtroom to identified family members, as opposed to the

general public."  *Sutton I,* 90 N.Y.S.3d at 112 (citing N.Y. Crim. Proc. Law § 470.05(2)); *see*

*also Garcia,* 188 F.3d at 81-82 (affirming the denial of habeas relief based on the

Appellate Division's ruling that the failure of a petitioner to object at trial rendered a

claim unpreserved for appellate review).

Second, the state procedural rule must be "firmly established and

regularly followed.  *See James,* 466 U.S. at 348.  New York's contemporaneous objection

rule "is a firmly established and regularly followed New York procedural rule," *see*

*Downs,* 657 F.3d at 103-04 (collecting cases), including in the context of the public trial

right, *see, e.g., id.* at 107 n.5 ("There are several examples of both the New York Court of

Appeals and the Appellate Division rejecting Sixth Amendment public trial claims

because a criminal defendant failed to comply in some way with New York's

contemporaneous objection rule."); *People v. Pollock,* 407 N.E.2d 472 , 474 (N.Y. 1980)

(public trial right not violated when defendant's attorney "voiced [only] a general

objection to the People's request to close the courtroom during the testimony of the

undercover detective and an informant"); *People v. Legere,* 81 A.D.3d 746, 751 (2d Dep't

2011) (voicing "only a general objection" to courtroom closure fails to preserve the issue

for appellate review); *People v. Latta*, 222 A.D.2d 303, 303-04 (1st Dep't 1995) (same).

Here, after the prosecution requested courtroom closure, Sutton's lawyer made only a

general objection.  Dkt. 6-5 at 282 ("I would just point out that my client does have

family here who did come to see today's proceedings.  So I would, obviously, object to

the closing of the courtroom to the general public.").  He did not make his objection

more specific, despite opportunities to do so.  For example, in response to a question

from the trial judge, Sutton's lawyer confirmed that two individuals in the courtroom

were Sutton's relatives, but he did not identify them or argue their familial relationship

to Sutton required their presence during Detective Murphy's testimony.  *See id.* at 283;

*see also Sutton I*, 90 N.Y.S.3d at 111-12.  During the hearing on the requested closure,

Sutton's lawyer did not question Detective Murphy and simply stated:  "I wish to rely

on my legal arguments as to the constitutionality of closing this courtroom to the

general public." Dkt. 6-5 at at 288.  At no time did Sutton's lawyer make any legal

arguments regarding courtroom closure or suggest reasonable alternatives to closure.

Moreover, Sutton has failed to demonstrate he is entitled to an exception

to the procedural default rule, because he has not shown either (1) cause and actual

prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of

the federal claim were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)

(citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir.

2011).  Accordingly, habeas relief is not available.

### D.      *Lesser Included Count*

Sutton next contends the trial court should have dismissed the charge of criminal possession of a controlled substance in the seventh degree as a lesser included count of criminal possession of a controlled substance in the third degree.  The Appellate Division, however, provided this relief on Sutton's direct appeal.  *Sutton I,* 90 N.Y.S.3d at 112 (concluding that Sutton's "conviction of criminal possession of a controlled substance in the seventh degree . . . is a lesser included count of criminal possession of a controlled substance in the third degree.").  Accordingly, this claim is moot and provides no basis for habeas relief.

### E.      *Sufficiency of the Evidence Claim*

Sutton next claims that his convictions were rendered on insufficient evidence and against the weight of the evidence.  In particular, he alleges that law enforcement did not find his DNA or fingerprints on the gun, and that there was a possibility that he was the buyer, not seller, in the alleged drug transaction.  *See* Dkt. 1 at 16.  The Appellate Division rejected this claim on direct appeal.  Sutton did not present this issue to the Court of Appeals, and so this claim is unexhausted.  *See Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (where petitioner "forcefully" argued one point in letter requesting leave to appeal, the other issues contained in his lower court briefs were not fairly presented and, accordingly, unexhausted).  But this claim, though

unexhausted, may be denied because it is plainly without merit. *See Ortiz*, 2011 WL 1331509, at *14.

Defendants in a criminal trial may be convicted only upon proof establishing their guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 309 (1979). When reviewing a claim that the evidence introduced at trial was insufficient to sustain a defendant's conviction, the reviewing court applies the standard set forth in *Jackson* to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citation omitted). In doing so, the court defers to the jury's assessments of both "the weight of the evidence [and] the credibility of witnesses." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted). Furthermore, the court "must look to state law to determine the elements of the crime." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)). A "[p]etitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Id.* (internal quotation marks and citation omitted).

Under New York law, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm." N.Y. Penal Law § 265.03[3]. "A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug." *Id.* §

220.39[1].  Finally, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it."  *Id.* § 220.16[1].

      At trial, law enforcement testimony established that petitioner possessed the loaded firearm and the gun was admitted into evidence.  For example, Officer Krolikiewicz testified that, when he went to handcuff Sutton in the car, he saw a silver gun in an open compartment of the car under the radio.  Dkt. 6-5 at 85:14-16.  Detective Murphy similarly described the location of the gun, testifying that he found it in the car's center console.  Dkt. 6-5 at 309:5-7, 310:4-6.  Moreover, Detective Boreshesky testified that when asked about the gun, Sutton "said he had been robbed a few weeks prior to that and he kept a gun with him for protection."  Dkt. 6-5 at 482:12-15.  While Sutton points to the lack of DNA or fingerprints, witnesses testified that was not uncommon.  For example, Detective Murphy testified that based on his experience of swabbing guns, "it's not uncommon to have DNA not show up."  Dkt. 6-5 at 312:21-24.

      With respect to Sutton's drug convictions, Detective Boreshesky testified that Sutton told him that "he was at the location to sell eight bags of heroin to a girl."  Dkt. 6-5 at 482:2-4.  Police witnesses testified that they observed Teaney and Heeber engage in behaviors indicative of drug buyers.  Dkt. 6-5 at 72-75 (how pawn shops "attracted drug people who would sell stuff for drugs."), 404-08 (observations of Teaney and Heeber).  Officer Rossler saw Teaney give Sutton what looked like money in

exchange for a light-colored package. Dkt. 6-5 at 183:7-17. After handcuffing Sutton and removing him from the car, Officer Krolikiewicz pried open Sutton's fingers to remove the envelopes from his fist -- and testing later revealed that the substance in those envelopes was heroin. Finally, the heroin was admitted into evidence. Accordingly, for the reasons stated above, Sutton's claim is plainly meritless. *See Ortiz*, 2011 WL 1331509 at *14. As to Sutton's claim that his convictions were rendered against the weight of the evidence, "assessments of the weight of the evidence . . . are for the jury and not grounds for reversal on appeal." *Maldonado*, 86 F.3d at 35.

### F.    *Sentence Claim*

In his final claim, Sutton contends that his sentence is excessive. The claim is really an argument that his sentence should have been reduced as a discretionary matter on account of mitigating factors, like his "longtime struggle with addiction and devotion to his family." Dkt. 1 at 16. The Appellate Division reached and rejected this claim on his direct appeal. Sutton did not present this claim to the Court of Appeals, making this claim unexhausted. *See Jordan*, 206 F.3d at 198-99. But this claim, though unexhausted, may be denied because it is plainly without merit. *See Ortiz*, 2011 WL 1331509, at *14.

The Second Circuit has repeatedly held that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam). Moreover, the

31

Supreme Court has confirmed that sentencing ranges, unless constitutionally

disproportionate, are "generally a policy choice to be made by state legislatures, not

federal courts." *Ewing v. California*, 538 U.S. 11, 25 (2003). Here, Sutton was convicted

of, among other things, criminal possession of a weapon in the second degree, which is

a class C felony under New York law. N.Y. Penal Law § 265.03. The term of

imprisonment for a class C felony "shall not exceed fifteen years," *id.* § 70.00(2)(c), and

the trial court sentenced Sutton to fifteen years based on his criminal history. Hence,

Sutton's sentence was within the range permitted by New York law, and no federal

constitutional issue is presented. Accordingly, this claim plainly lacks merit and is

denied even though it is unexhausted.

## CONCLUSION

Sutton has failed to show any basis for relief under 28 U.S.C. § 2254.

Accordingly, the Petition is denied. Additionally, I decline to issue a certificate of

appealability because Sutton has not made a substantial showing of the denial of a

constitutional right. *See* 28 U.S.C. § 2253(c)(2). Pursuant to 28 U.S.C. § 1915(a)(3), I

certify that any appeal taken from this decision and order would not be taken in good

faith.

The Clerk of Court is respectfully directed to mail a copy of this

memorandum decision and the judgment to Sutton at his last address of record.

SO ORDERED.

Dated:      New York, New York
            March 12, 2024

                                    _____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting By Designation